UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
THE CHARTER OAK FIRE INSURANCE COMPANY,

                       Plaintiff,

-against-

THE CINCINNATI INSURANCE COMPANY,

                       Defendant.
---------------------------------------------------------------------X

Civil Action No. 6:24-cv-1485 (DNH/ML)

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, THE CHARTER OAK FIRE INSURANCE COMPANY ("Charter Oak"), by its attorneys, Usery & Associates, as and for its Complaint for Declaratory Judgment against Defendant, THE CINCINNATI INSURANCE COMPANY, ("Cincinnati"), alleges upon information and belief as follows:

### Nature of the Action

1. In this action, Charter Oak seeks a declaration that Cincinnati is obligated to defend and to indemnify EXYTE U.S., Inc., ("EXYTE") in a lawsuit styled *Asaro v. Exyte U.S. Inc., Jersen Construction Group and Mohawk Valley Edge.,* pending in the Supreme Court of the State of New York, County of Oneida, Index Number EFCA2022-000222 (the "Underlying Action"), as additional insureds under a policy of insurance issued by Cincinnati to Duncan & Cahill ("D&C") on a primary, non-contributory basis.

### The Parties

2. At all times relevant hereto, Charter Oak was and is a Connecticut corporation duly licensed and authorized to write insurance and conduct business in the State of New York with a principal place of business in Hartford, Connecticut.

1

3. Upon information and belief, at all times relevant hereto, Cincinnati was and is an Ohio corporation with a principal place of business in Ohio and authorized to conduct business in New York.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

5. Plaintiff in the Underlying Action, Lisa Asaro ("Claimant"), filed a Notice of Claim with the State of New York in which she claims in her Verified Bill of Particulars dated August 24, 2023 that she will incur lost earnings of $300,000.00 and as a result of the personal injuries to her right shoulder, right wrist and fracture at C7, she has pain and suffering damages over $700,000.00; therefore, the jurisdictional limit is satisfied. (See Underlying Complaint hereto attached as Exhibit "A").

6. Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred here.

7. An actual and justiciable controversy exists between the parties as to the coverage afforded under the insurance policy issued by Defendant Cincinnati.

8. Plaintiff Charter Oak has no remedy at law.

## The Insurance Policies

9. Charter Oak issued an insurance policy to EXYTE providing commercial general liability coverage for the policy period January 1, 2020 through January 1, 2021 under Policy No. CO-5788B770-COF (the "Charter Oak Policy").

10. Subject to certain terms, conditions, and exclusions, the Charter Oak Policy

generally provides coverage for bodily injury that takes place during the policy period and is caused by an accident.

11. Defendant Cincinnati issued an insurance policy to D&C providing commercial general liability coverage for the policy period of January 19, 2019 through January 18, 2022 under policy No.: EPP 0172588 (the "Cincinnati Policy" hereto attached as Exhibit "B").

12. Subject to certain terms, conditions, and exclusions, the Cincinnati Policy provides coverage for bodily injury taking place during the policy period and is caused by an accident.

13. The Cincinnati Policy contains an NEW YORK CONTRACTORS' COMMERICAL GENERAL LIABILITY BROADENED ENDORSEMENT (GA 233 NY 02 07) which provides, in relevant part:

> **9. Automatic Additional Insured – Specified Relationships**
>   **a.** The following is hereby added to
>       **SECTION II - WHO IS AN INSURED**:
>
>   **(1)** Any person or organization described in Paragraph **9.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:
>
>   **(a)** A written contract or agreement; or
>
>   **(b)** An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued, is an insured, provided:
>
>   **(a)** The written or oral contract or agreement is:
>
>   **1)** Currently in effect or becomes effective during the policy period; and
>
>   **2)** Executed prior to an "occurrence" or offense to which this insurance would apply; and

3

  **(b)** They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

***

  **(f)** Any person or organization with which you have agreed per Paragraph **9.a.(1)** above to provide insurance, but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf. . . .

  c. The Cincinnati Policy also contained endorsement **c. SECTION IV- COMMERCIAL GENERAL LIABILITY CONIDITIONS** is

  hereby amended as follows:

  **(1)** Condition **5. Other Insurance** is amended to include:

  **(a)** Where required by a written contract or agreement, this insurance is primary and / or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and / or noncontributing, whichever applies, with this insurance.

  **(b)** Any insurance provided by this endorsement shall be primary to other insurance available to the additional insured except:

    **1)** As otherwise provided in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Other Insurance, b. Excess Insurance**; or

    **2)** For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, the coverage provided under this endorsement shall also be excess.

***

> **(2)** Condition **11. Conformance to Specific Written Contract or Agreement** is hereby added:

**11. Conformance to Specific Written Contract or Agreement**

> With respect to additional insureds described in Paragraph **9.a.(2)(f)** above only:
>
> If a written contract or agreement between you and the additional insured specifies that coverage for the additional insured:
>
> **a.** Be provided by the Insurance Services Office additional insured form number **CG 20 10** or **CG 20 37** (where edition specified); or
>
> **b.** Include coverage for completed operations; or
>
> **c.** Include coverage for "your work,"…

## Background Facts

14. CREE MVF entered into a Ground Sublease Agreement between Economic Development Growth Enterprises Corporation (Sublandlord) and CREE, Inc., (Subtenant) to perform and develop the Marcy Project a part of New York Polytechnic Institute for the project located at the Cree/Wolfspeed Mohawk Valley Nanocenter in New York (the "Project").

15. On March 30, 2020, EXYTE entered into an agreement with CREE, Inc., to provide engineering, procurement, construction and commissioning and related services in connection with the Project. The terms of the Contract required EXYTE to provide certain insurance, including, "Commercial General Liability insurance with a combined single limit for bodily injury (including illness and death at any time resulting therefrom) and property damage of $50,000,000.00 shall be maintained on a combined single limit per occurrence basis and in the aggregate (can be composed of a combination of commercial general liability insurance and excess/umbrella liability

5

insurance). Such insurance shall provide contractual liability, products and completed operations, sudden and accidental pollution liability coverage for EXYTE's undertakings under this Agreement and all Work assignments."  (See ¶ 13.1 of Cree/Exyte Agreement as Exhibit "C").

16.     EXYTE, as Contractor, and D&C, as Subcontractor, entered into a Subcontract Agreement (the "Subcontract") on August 26, 2020, to perform certain work at the Project. (See Agreement as Exhibit "D").

17.     Pursuant to the Subcontract, D&C agreed to "[p]rovide all necessary materials, labor, equipment, tolls, scaffolding, hoisting, licensing, fees, permits, supervision and expertise to perform the scope of work including, but not limited to the scope of work described as follows in accordance with the drawings, specifications and referenced Bid documents." *Id*.

18.     The terms of the Subcontract required D&C to provide certain insurance, including Commercial General Liability coverage with limits of not less than $1,000,000 per occurrence and $2,000,000.00 in the general aggregate.

19.     The terms of the Subcontract required D&C to name, among others, EXYTE as an additional insured on a primary and non-contributory basis. (*See* ¶ 42. Insurance).

20.     In the Underlying Action, Claimant, who was employed by D&C alleges that on November 18, 2020, she sustained injuries to her person when she was caused to slip or trip on a passageway and/or walkway that was covered with ice as she was walking from a meeting to her work area at the Project. (See paragraph 14 of the Underlying Complaint).

21.     In Answers to D&C's Bill of Particulars the Claimant alleges that "[t]he entire construction site, including the passageway where Plaintiff's accident occurred was covered in ice. The ice was apparent to anyone and everyone on the job site."  (See paragraph 8, of the Bill of Particulars hereto attached as Exhibit "E").

22. In conjunction with the Underlying Action, Claimant alleges that '[d]efendants failed to see that ice was removed from the passageways, walkways, and driveways and failed to warn of the icy condition." *Id*. at ¶ 9.

23. Claimant alleges that each Defendant, "failed to take steps to remove the ice from the walkways, passageways and driveway and failure to warn of icy conditions." *Id*. ¶ 10.

24. In the Underlying Action, Claimant seeks recovery for alleged personal injuries including, but not limited to, loss of earnings in the range of $300,000.00 and pain and suffering in the range of $700,000.00 for the bodily injury she has suffered. *Id*. at ¶ 28.

25. Charter Oak has been providing and continues to provide a defense to EXYTE in the Underlying Action.

## TENDERS TO CINCINNATI

26. By correspondence dated February 22, 2022, Charter Oak tendered the defense and indemnity of Exyte and sought additional insured coverage under the Cincinnati Policy.

27. On May 16, 2023, Cincinnati's denied Charter Oak's tender. Cincinnati has, refused to provide additional insured coverage, including defense and indemnity, to EXYTE and Mohawk under D&C's Policy.

## CAUSE OF ACTION FOR DECLARATORY RELIEF

28. Charter Oak repeats, realleges, and incorporates each and every allegation contained in paragraphs "1" through "27" above as if fully set forth herein.

29. D&C performed work at the Project pursuant to the Subcontract with EXYTE.

30. D&C performed work at the Project for EXYTE and Mohawk Valley.

31. EXYTE qualifies as additional insured under the Cincinnati Policy.

32. EXYTE is entitled to a defense under the Cincinnati Policy for the Underlying

Action.

33. EXYTE is entitled to indemnification under the Cincinnati Policy for any verdict or judgment rendered against them in the Underlying Action.

34. The coverages provided to EXYTE under the Cincinnati Policy are primary to and non-contributory with any coverage provided by the Charter Oak Policy.

35. Cincinnati has refused to fulfill its coverage obligations to EXYTE with respect to the Underlying Action.

36. Accordingly, Charter Oak seeks a declaration that Cincinnati has an obligation to defend and to indemnify EXYTE as additional insured under the Cincinnati Policy; that the coverages provided by the Cincinnati Policy to EXYTE are primary; and the obligations of Charter Oak to EXYTE and Cincinnati are excess of proper exhaustion and full payment of the limits of the Cincinnati Policy.

37. In addition, Charter Oak seeks an award at law and in equity against Cincinnati for recovery of all sums Charter Oak has paid and continues to pay in the defense of EXYTE in the Underlying Action because the coverages provided by the Cincinnati Policy are primary to any coverage provided by Charter Oak.

## **PRAYER FOR RELIEF**

WHEREFORE, Travelers respectfully requests that this Court issue judgment as follows:

1. Declaring that the Cincinnati Policy was in full force and effect on the date of the alleged accident.

2. Declaring that all the terms and conditions of the Cincinnati Policy have been complied with and met.

3. Declaring that the alleged accident and Underlying Action fall within the coverage

afforded by the Cincinnati Policy.

4. Declaring that EXYTE is an additional insured under the Cincinnati Policy to whom Cincinnati owes coverage with respect to the Underlying Action.

5. Declaring that Cincinnati has a duty to defend EXYTE in connection with the Underlying Action.

6. Declaring that Cincinnati has a duty to indemnify EXYTE in connection with the Underlying Action.

7. Declaring Cincinnati's coverage obligations to EXYTE with respect to the Underlying Action are primary to any coverage provided by Charter Oak.

8. Declaring that the obligations of Charter Oak to EXYTE in connection to the Underlying Action are excess and non-contributory to those of Cincinnati.

9. Declaring that an actual controversy exists between Charter Oak and Cincinnati with respect to Cincinnati's duty to defend and indemnify EXYTE in connection with the Underlying Action.

10. Awarding judgment in favor of Charter Oak against Cincinnati in an amount equal to the sums that Charter Oak incurred and continues to incur in defending the claims against EXYTE in the Underlying Action.

11. Awarding judgment in favor of Charter Oak against Cincinnati in an amount equal to any sums Charter Oak may incur to indemnify EXYTE for the claims of the Underlying Action.

12. Granting an award in favor of Charter Oak for the costs of suit incurred herein.

13. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 6, 2024

**USERY & ASSOCIATES**

By: /s/*Michele A. Lo Presti-Wouters*
Michele A. Lo Presti-Wouters
Telephone: (631) 501-3095
Facsimile: (844) 571-3789
Email: mloprest@travelers.com

Please address all correspondence sent by mail to:
P.O. Box 2996
Hartford, CT 06104-2996

Physical Address:
485 Lexington Avenue, 6th Floor
New York NY 10017

*Attorneys for Plaintiff, The Charter Oak Fire Insurance Company*